IN RE TESTAMENTARY TRUST OF CLAIR C. CRISS, DECEASED. CREIGHTON UNIVERSITY, APPELLEE, V. VOLUNTEERS OF AMERICA, INC., APPELLANT.

391 N.W.2d 119

Filed August 1, 1986.    No. 85-057.

David L. Hefflinger of McGrath, North, O'Malley & Kratz, P.C., for appellant.

William J. Riley of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, and Milton R. Abrahams and Frank F. Pospishil of Abrahams, Kaslow & Cassman, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

This is the second appearance of this case. The original litigation to construe the trust instrument may be found at 213 Neb. 379, 329 N.W.2d 842 (1983). The critical language of that opinion as it applies to the present appeal is as follows:

> The interests of the life income beneficiaries and charities set forth in article II, sections (a), (b), and (c) [section (c) beneficiaries now consisting of the Volunteers of America, Inc., Hattie B. Munroe Foundation, Inc., and Creighton University], of the trust indenture are therefore accelerated to take effect at the death of Clair C. Criss on March 9, 1952, as set out in the orders of the county court and the District Court.

*Id.* at 401, 329 N.W.2d at 854.

The present litigation began with the filing of a petition in the county court by The Omaha National Bank, trustee, to construe certain specific provisions of the trust instrument. In this appeal we are concerned only with the order issued in regard to Volunteers of America.

The petition alleges:

> Upon the basis of documents, statements, and other evidence, the Trustee is of the opinion that beneficiary Volunteers of America Inc. has existed since March 9, 1952, and continues to exist through Volunteers of America, Inc. but ceased about April 1, 1970, and before December 31, 1970, to perform the work done by it on January 15, 1942, and March 9, 1952.

The petition also refers to a letter received from Creighton University alleging that Volunteers of America, Inc., is not entitled to any payments from the trust. The petition further alleges that with regard to the beneficiaries Creighton University, Hattie B. Munroe Foundation, Inc., and Volunteers of America, Inc., the trustee has taken no action and awaits the

outcome of these proceedings, concluding with a request that the court construe the trust instrument with respect to the proper dispositions of the income and assets of the trust.

Article II of the trust instrument provides for specific periodic payments from income to certain beneficiaries named in section (a), with spillover benefits to named persons in section (b), and further benefits, if any income remains, to section (c) beneficiaries, Creighton University, Hattie B. Munroe Foundation, and Volunteers of America, to a maximum of $10,000 each per year. Any remainder income is to be accumulated in reserve for possible future payments.

Article III provides that upon the failure of the condition of continuity of ownership of stock of United Benefit Life Insurance Company (which contingency did occur), and following the death of the last of the beneficiaries named in article II(a) (that contingency has not yet occurred), the trust shall continue in perpetuity with payments to be made as provided for in II(b) and (c). Then follows the critical language in article III:

> In the event, one or more of the institutions and the alternate, if any named therefor, in said Section (c) shall, in the opinion of the Trustee, *cease to exist or to perform the work now done by them*, the remaining institutions named in said Section (c) shall receive all of the income that otherwise would have been distributable among the three institutions.

(Emphasis supplied.)

The answer filed by Volunteers of America agrees generally with the allegations of the petition, except that it denies that it no longer "perform[s] the work done by them," and denies that the above-quoted exclusionary language of article III is effective until the death of the last of the article II(a) beneficiaries. Therefore, it insists that regardless of the interpretation of the "cease . . . to perform the work now done by them" language, Volunteers of America is entitled to income distributions for the past years and until the death of the last of the II(a) beneficiaries.

The answer also alleges, in effect, res judicata and laches on the part of the trustee. It further states that it has been and is

performing the same work that it did in 1952. Creighton University filed nothing by way of pleadings or objections.

Volunteers of America then filed a motion for partial summary judgment, alleging that there was no genuine issue as to any material fact and it was entitled to judgment as a matter of law in that

(1) the decision of the Nebraska Supreme Court is determinative on the issue of Volunteers of America's right to income, and the increments thereon, in accord with the provisions in Article II of the Indenture from the date of death of C. C. Criss on March 9, 1952;

(2) the provisions of Article II of the Indenture require said distributions to be made without discretion on the part of the Trustee; and

(3) such Trustee discretion, if any, was to be exercised at the time of such annual distributions and such time has long since passed.

At the hearing on the motion for summary judgment, in addition to the petition, Volunteers of America's answer, and its motion for partial summary judgment, there was received in evidence a copy of the articles of incorporation and bylaws of Volunteers of America and the deposition of Thomas N. Moore, trust officer of The Omaha National Bank.

The county court granted Volunteers' motion for partial summary judgment and found that it was entitled to the annual income distributions under article II of the trust from March 9, 1952. In doing so the county court either rejected or ignored the bases upon which Volunteers grounded its motion, and instead decided the question of the meaning of the phrase "cease . . . to perform the work now done by them." This is apparent from a reading of the seven-page memorandum submitted by the county court judge in support of this order.

That memorandum points out that although the gift in article II, section (c), is to " 'Volunteers of America, *whose Omaha office* is now located at 317½ North 15th St., Omaha, Nebraska.' (Emphasis supplied)," such language does not, as a matter of law, require that organization to continue operations in Omaha to prevent disqualification by the language of article

III that it shall not "cease . . . to perform the work now done by them.".

The memorandum further states that no party asserts that Volunteers does not function on a national basis generally as in 1952, and no one asserts that Volunteers does not perform the same work, although there has been a change of workplace, i.e., it no longer operates in Omaha, Nebraska.

On appeal to the district court that court reversed the judgment of the county court and remanded the case for further proceedings. In doing so it found that the three grounds raised by Volunteers in its motion for summary judgment should be overruled. It further found that on the issue of qualification of Volunteers of America, there were genuine issues as to material facts existing, and the court should proceed with a trial on the merits.

Thomas N. Moore testified by deposition that he had an "understanding" of the work Volunteers was doing in Omaha in 1952, and related what that was "to the best of my knowledge"; that it was his "understanding" that it carried on the same general type of work throughout the United States in 1952; and that today his "understanding" was that it was still a functioning organization performing about the same type of things throughout the United States, only it was not functioning in Omaha.

Additionally, the bylaws of Volunteers of America provide that each "Volunteer Station or Post" must conduct its work independently from all other stations, and money received by way of contributions shall always be understood to be for the exclusive use of the Volunteers of America in the city or vicinity where such contributions were received. No other properly received evidence appears in the record.

We agree with both the county court and the district court that Volunteers was not entitled to partial summary judgment on any of the three grounds alleged in its motion. Volunteers does not contest that ruling on appeal, and therefore it is unnecessary to discuss the matter further.

Volunteers in its assignments of error states only that the district court erred in reversing the partial summary judgment because (1) there exists no genuine issue of material fact as to

Volunteers' entitlement to its share of income under article II of the Criss Trust as a matter of law, and (2) there exists no genuine issue of material fact as to its entitlement to its share of income under article II of the Criss Trust through April 1, 1970, as a matter of law.

We agree that there are at least two critical questions of law which must eventually be decided; i.e., whether the requirements of article III apply to article II, and whether Volunteers of America, although engaged generally in the same activities today as it was in 1952, has "ceased . . . to perform the work now done by them" because it no longer operates in Omaha, Nebraska. However, neither of these issues was properly raised in Volunteers' motion.

We have held that "[w]here one party moves for a partial summary judgment on certain issues only, the other party should not be expected at the hearing on the motion for summary judgment to present evidence on issues as to which the motion does not apply." (Syllabus of the court.) *In re Freeholders Petition*, 210 Neb. 583, 316 N.W.2d 294 (1982). The effect of the county court's order was to violate that rule. Parties antagonistic to Volunteers' position should have the opportunity to squarely meet the issue.

The judgment of the district court is affirmed.

AFFIRMED.